## COOK *v.* RICE.

DENVER TOWN SITE — *title under act of congress.* A bill cannot be maintained to set aside a conveyance of lands in the city of Denver, made by the probate judge of Arapahoe county pursuant to the act of congress of May 28, 1864, " for the relief of the citizens of Denver " (13 Stat. at Large, 94), to an actual occupant and owner of improvements upon the lands so conveyed by one who has never occupied or improved such lands.

JURISDICTION *of probate judge in town site cases.* Where lands have been conveyed by a probate judge of Arapahoe county, pursuant to the act of congress of May 28, 1864, " for the relief of the citizens of Denver " (13 Stat. at Large, 94), his successor in office has no title to the lands so conveyed, and, therefore, no power, under the act of assembly (R. S. 622), to proceed in a summary manner to hear and determine controversies affecting the title to such lands.

*Error to District Court, Arapahoe County.*

THE bill was brought to the January term, A. D. 1869.

Complainant charged that on the 28th day of May, 1864, and the 6th of May, 1865, he was the actual occupant of lots 24, 25, 26 and 27, in block E, in the east division of the city of Denver, and the *bona fide* owner of one undivided half thereof, and of the improvements thereon ; that H. R. Hunt owned the other undivided half; that on the 6th of May, 1865, James Hall, in pursuance of the act of congress, approved May 28, 1864, "for the relief of the citizens of Denver," entered the tract of land in which said lots are located, in trust for the several use and benefit of the rightful occupants of said land, and the *bona fide* owners of the improvements thereon ; that on the 20th day of June, A. D. 1865, complainant and said Hunt filed with said Hall, probate judge of Arapahoe county, their claim for title to said lots in pursuance of the act of assembly, entitled "An act prescribing rules and regulations for the execution of the trust arising under the act of congress aforesaid," approved March 11, 1864 ; that on the 8th of June, 1865, Isaac N. Campbell also filed his claim for title to said lots, and that on the 8th of August, 1865, the city of Denver filed its claim for title to the same lots ; that on the 24th of January, 1868, complainant sold and conveyed said lots to Edward Chase ; that on the 24th of June, 1868, Chase sold and conveyed said lots to William R. and Hiram F. Ford; that on the 9th of December, 1868, the Fords sold and conveyed said lots to complainant ; that on the 24th of January, 1868, the said Hunt sold and conveyed his interest in said lots to complainant ; that on the 4th of March, 1868, one William Hodge, the complainant, the said Hunt and the city of Denver, each withdrew their claim of title in favor of the said Edward Chase ; that there then remained only the claim of the said Edward Chase, and of the said Isaac N. Campbell, to said lots ; that proceedings were instituted before the probate judge to determine the right of the said respective claimants on the 27th of January, 1868, in which all parties were duly served with notice, and that on the 5th of March, 1868, a final decree was entered in favor of the said Edward Chase, in pursuance of which on the 21st

day of December, 1868, the probate judge executed a deed to said complainant for said lots ; that on the 23d of August, 1867, Omer O. Kent, being then probate judge and successor in the said trust to the said Hall, executed a conveyance for said lots to Alonzo Rice, the defendant; that Rice was never in possession of the lots, and never had any interest therein, prior thereto ; that he never filed any claim of title to the said lots with the said probate judge; that the deed made by said Kent to said Rice was without authority of law ; that the said Kent, as probate judge, never took any testimony as to the right of the said Rice to the said lots ; that no notice was given of any trial before said judge, nor was any trial had, as to the right of the said Rice to said lots; and that neither the complainant, nor any of his grantees, ever had any notice of the claim of the said Rice to said lots, or of any conveyance thereof to him by said Kent, until after said Rice filed his deed for record, December 24, 1868 ; that, since the 28th May, 1864, complainant and his grantees have been in possession of said lots, and the *bona fide* owners of improvements thereon until the 20th December, 1868, when the said Rice wrongfully took possession.   The complainant has paid taxes assessed against said lots for four years last past; that, on the 31st August, 1867, said Kent conveyed to his successor in office, Jacob Downing, all the lands entered by said Hall not reserved, and which had been previously conveyed by said Hall to him ; that, prior to the 24th December, 1868, the said Downing had no notice of any conveyance by said Kent to said Rice.

The oath to the answer was waived.   The prayer of the bill was, that the deed from Kent to Rice might be canceled, and the latter enjoined from disturbing complainant's possession.

The answer admits the entry of the land by Hall; that Isaac N. Campbell filed his claim for title on the 8th June, 1865; that Omer O. Kent was the successor in office of the said Hall; and that, on the 23d August, 1867, Kent conveyed to defendant the lots in controversy.   Defendant avers that

he purchased the lots, and the improvements thereon, of Isaac N. Campbell, on the 7th day of June, 1866, and that he thereafter remained in possession of the same; that he had placed upon the lots improvements of the value of $1,500. The other allegations in the bill were expressly denied, in some instances, and in others defendant disclaimed any knowledge, and demanded proof.

Complainant put in evidence, before the master, a transcript of proceedings before Jacob Downing, probate judge, showing:

1. A summons issued to the sheriff, or any constable of Arapahoe county, commanding him to summon Edward Chase, Isaac N. Campbell, and the city of Denver, to appear before the probate court, on the 7th day of February, 1868, to make their proofs and allegations respecting their claims to lots described in the bill, which summons was dated January 27, 1868.

2. A return of service upon Edward Chase and William R. Ford, alderman, and "not found" as to Campbell, dated January 30, 1868, and signed W. J. Benton, constable.

3. An affidavit of Edward Chase, filed January 31, 1868, setting forth that Isaac N. Campbell cannot, upon due inquiry, be found, and that service cannot be had upon him.

4. A certificate of Fred. J. Stanton, showing a publication of notice to Isaac N. Campbell, in the weekly *Denver Gazette*, for four successive weeks, the said notice requiring the said Campbell to appear at the office of the probate judge, and present his proof concerning said lots, on the 5th March, 1868.

5. The default of said Campbell, and the decree of the court entered March 5, 1868, awarding the lots to Chase.

Complainant also put in evidence a deed from William R. and Hiram F. Ford to himself, dated December 19, 1868, for the lots in controversy; also a deed for the same lots from Jacob Downing, probate judge, to complainant, dated December 21, 1868; also, a claim of title of Hamilton R. Hunt and Charles A. Cook to the same lots, filed with the probate judge.

The complainant testified, in his own behalf, that he had paid taxes upon the property described during a period of four or five years. No evidence was given to show that the complainant, or any of his grantors, had ever occupied the premises, or made any improvements thereon.

Defendant gave in evidence a deed from John Dalton to Isaac N. Campbell, dated August 8, 1864, conveying property described as follows: "The house and seven lots fronting on Wynkoop street, now occupied by me, in the east division of the city of Denver." Also the claim of title filed with the probate judge by said Campbell, on the 8th of June, 1865, for the property described in the bill; also, a deed from Isaac N. Campbell to Alonzo Rice, dated June 7, 1866, for the property described in the bill; also, a deed from Omer O. Kent to Alonzo Rice, for the same property, dated August 27, 1867.

Several witnesses testified to the occupancy of the property by Dalton, Campbell, and the defendant, successively, from and after the year 1860.

Upon the hearing, the bill was dismissed, and the complainant sued out this writ of error.

Messrs. BROWNE & PUTNAM, for plaintiff in error.

Messrs. MILLER & MARKHAM, for defendant in error.

BELFORD, J. The bill, in this case, was filed to set aside a deed executed by Omer O. Kent, probate judge, etc., to Alonzo Rice. Issue was joined, cause referred to a master to take proof, and on the final hearing, a decree was entered dismissing the bill. The land in controversy is a part of the Denver town site, entered by James Hall, for the benefit of the actual occupants, and owners of improvements thereon.

The evidence, I think, clearly establishes the following facts: First. That one John Dalton entered upon this land in 1860, erected a house or cabin, and occupied it with his family until 1863; he then conveyed it to Isaac N. Campbell, who entered into occupation, and resided with his

family until April, 1865. Campbell placed some additional improvements on the property, and on the 7th day of June, 1866, conveyed these lots to Rice, who, it appears, has been in possession ever since, and paid the taxes on the same. It further appears, that on the 6th day of May, 1865, Hall, probate judge, etc., entered the land, and on the 7th day of June following, Campbell made his filing, and asked for a deed. No deed was made to Campbell; Rice, as his grantee, however, received a deed from Kent.

It appears further, that Rice has placed on this property improvements, amounting in value to the sum of $3,000. There is nothing in the record to show that the complainant ever was in the occupation of this property, or that he ever placed any improvements thereon.

The trust closed on the day the entry was made by Hall, and if the complainant was not in the actual occupation of the property, or the owner of the improvements thereon, at that time, he certainly cannot be regarded as a beneficiary of the trust. The only thing in the record upon which any claim in favor of the complainant could be based, is the filing he made; but even the date of this is undisclosed. Whether it was before or after that of Campbell, is a matter of conjecture.

In his testimony he does not assert that he ever occupied the land, or erected improvements on the same. This, certainly, is a very weak showing to be made by one who asks a court to divest another of property, whose possession, through his grantors, and himself, reaches back to 1860.

Great stress is laid on certain proceedings had in the probate court, before one Jacob Downing, probate judge, wherein Edward Chase appears as complainant, and Isaac N. Campbell appears as respondent, and in which proceeding it was adjudged that Chase was the owner of this property. Prior to the election of Downing, Kent had conveyed this property to Rice; indeed, it appears that Rice had been in possession of this property for some eighteen months prior to the commencement of this action. We think that Downing had no power to adjudicate between these parties.

Section 8, R. S., p. 622, seems to limit the jurisdiction of the probate judge to such lands as shall be held by him. It is clear, that at the time of this adjudication, the legal title was not in Downing. His predecessor in the administration of this trust had parted with the title to Rice, and in him the legal title was vested. We, therefore, attach no weight to these proceedings. If we look at this case outside of the conveyance made by Kent, and which the complainant, in this action, seeks to set aside, we find the equities are with the respondent. Dalton entered on this land in 1860, occupied it until 1863; was succeeded by Campbell, who actually occupied it until 1865, who was succeeded by Rice, whose possession has been continuous, ever since.

From the record it does not appear that the complainant ever occupied this land, or erected improvements thereon. He certainly is in no position, upon this showing, to question the title of the respondent.

*Affirmed.*