COFIELD v. McCLELLAND.

1. A bill to compel a conveyance from a person to whom the probate judge of Arapahoe County, Colorado Territory (in which county is situated Denver), had conveyed a lot in pursuance of the acts of Congress of May 23d, 1844, and May 28th, 1864, for the relief of the city of Denver, and of the act of Colorado Territory of March 11th, 1864, dismissed:

1st. Because the defendant was in possession of the lot in question at the time of the passage of the act for the relief of the city of Denver, and at the time of the entry of the lands made by the probate judge, by means of which he became and was the party by law entitled to the deed from the probate judge; and,

2d. Because the appellant, by omitting to sign and deliver the statement required by section four of the Territorial statute, became barred of the right to the lands, both in law and equity.

2. Notices required by statute presumed to have been given by a probate judge, he having made a conveyance of land which could have been properly made only after such notices given.

APPEAL from the Supreme Court for the Territory of Colorado; the case being thus:

The city of Denver, which is in the county of Arapahoe, Colorado Territory, was originally laid out by a company or association of persons, on the public domain of the United States, before the same had been surveyed and became subject to entry. And the company was aided by the privileges of pre-emption, at the minimum price, being secured to settlers and occupants of lots by the general enactment of May 23d, 1844,* "for the relief of the citizens of the towns upon the lands of the United States under certain circumstances," and by a special enactment "for the relief of the citizens of Denver," of the 28th of May, 1864,† whereby the probate judge of the county was constituted a trustee to enter the land selected for the site of the town, when the same became subject to entry, and to pass the legal title to the settlers and occupants of lots, under rules and regulations prescribed by the legislative authority of the Territory of Colorado.

These acts being in force, the probate judge of Arapahoe

---

* 5 Stat. at Large, 657.    † 13 Id. 94.

County having, on the 6th of May, 1865, entered the town site under the acts referred to, on the 10th of May, 1865, and in accordance with the directions of a Territorial act of Colorado, of March 11th, 1864, advertised for four weeks thereafter in a weekly newspaper published at Denver (though whether also by posting notices in three public places in the town, which a Territorial act of Colorado required, did not appear, the judge himself being dead), the fact that he had made the said entry, and that all claimants of lots in the town should within ninety days present their claims to him.

Mrs. Louisa McClelland, then, as the evidence in the case went strongly to show, in occupation of lot No. 6, block 69, in Denver, and who had erected valuable improvements on it, and was then paying taxes upon it—all without apparent knowledge of any counter claim—accordingly presented her claim for the said lot, and there being no counter claim made to it by any one, the probate judge, on the 11th of August, 1865, conveyed the said lot to her. She being thus in possession, one Cofield, in April, 1869, filed a bill against her to compel a conveyance to him. The bill alleged an equitable title to the lot in the complainant by the occupation and possession; a prior settlement, to wit, by a certain Preston, in 1859, a conveyance by Preston to one Hall, and after several intermediate conveyances, by which the lot came to one Bates, a conveyance by Bates to the complainant in 1869.*

The court below having dismissed the bill, the complainant took this appeal.

*Mr. J. M. Woolworth, for the appellant; Messrs. Bartley and Casey, contra.*

Mr. Justice HUNT delivered the opinion of the court.

The territory upon which stands the city of Denver, Colorado, was entered upon, occupied, and possessed by numer-

---

* There was also an allegation of collusion with the probate judge, but this was denied on the answer being wholly disproved, and being put aside by the court, need not be noticed.

ous persons before the same was surveyed and had become subject to public entry. Occurrences like the one which gives rise to this bill seem to have been common, and the rights of the parties were protected and regulated by an act of Congress passed May 23d, 1844. A special act was also passed by Congress, on the 28th of May, 1864, " for the relief of the citizens of Denver." It is by the principles prescribed in these several statutes that the rights of the parties in this suit are to be determined.

The first of the acts to which reference has been made* authorizes the probate judge to enter at the proper land office the land settled and occupied by such occupants of a town or city. It is also enacted that such entry by him shall be " in trust for the several use and benefit of the occupants thereof according to their respective interests, the execution of which trust as to the disposal of the lots in such town, and the proceeds of the sale thereof, to be conducted under such rules and regulations as may be prescribed by the legislative authority of the State or Territory in which the same is situated."

The act " for the relief of the citizens of Denver, in the Territory of Colorado,"† authorizes " the probate judge of Arapahoe County to enter at the minimum price, in trust for the several use and benefit of the rightful occupants of said land, and the *bonâ fide* owners of the improvements thereon, according to their respective interests, the following legal subdivisions of land," describing certain specific divisions, of which the lot in question is a portion.

The act of the Territorial legislature of Colorado, passed March 11th, 1864, contained numerous provisions regulating the rights of settlers and the manner in which their rights shall be ascertained. The second section enacts that the title from the probate judge shall be in trust for and conveyed to " the person or persons who shall have, possess, or be entitled to the possession or occupancy thereof according

---

* May 23d, 1844, 5 Stat. at Large, 657.
† May 28th, 1864, 13 Stat. at Large, 94.

to his, her, or their respective rights or interest in the same, as they existed in law or equity, at the time of the entry of such lands, or to his, her, or their heirs or assigns."

This regulating act of the Territory is in harmony with the acts of Congress. It expresses more explicitly than do those acts, the statement that the occupation and possession which gives the right, is that which exists at the time of the entry of the lands by the probate judge. Those in possession of the land when the entry shall be made by the probate judge, are the persons for whom he holds the lands in trust, and to whom he is to make the respective deeds. Although less explicitly declared, this is the construction and meaning of the acts of Congress also.

The land on which the city of Denver stands was entered by the probate judge in May, 1865. The evidence is strong and quite convincing that at that date, as well as at the time of the passage of the enabling act (May, 1864), Mrs. McClelland, the defendant, was in the actual possession of lot No. 6, with valuable improvements made thereon, and paying the taxes on the same. Such must have been the conclusion of the court below, and we concur in it. The result is fatal to the plaintiff's right of recovery.

Again: Section three of the Territorial act, to which reference has been made, makes it the duty of the judge entering the land, within thirty days after such entry, by posting a notice in three public places and by publishing the same in a newspaper of the town, if there be one, to give notice of such entry. This notice is required to be published once in each week, for three weeks, and to contain an accurate description of the lands so entered. It was published by the probate judge in a newspaper published at Denver, for four weeks, commencing May 10th, 1865. The judge was not living at the time of the trial, and there was no evidence that the notice was posted in three public places in the town. We think this is a case in which the presumption applies that the officer has done his duty, especially as no provision was made in the act for procuring the evidence that notice had been published. The case comes within the rule so well

settled in this court, " that the legal presumption is that the surveyor, register, governor, secretary of state, have done their duty in regard to the several acts to be done by them in granting lands, and therefore surveys and patents are always received as *primâ facie* evidence of correctness."[*]

Section four of the Territorial act, to which reference has been made, enacts as follows:

" § 4. Each and every person or association, or company of persons, claiming to be an occupant or occupants, or to have possession or to be entitled to the occupancy or possession of such lands, or to any lot, block, or share therein, shall, within ninety days after the first publication of such notice . . . sign a statement in writing, containing an accurate description of the particular parcel or parts of land in which he claims an interest, . . . and deliver the same into the office of the judge or judges, and all persons failing to sign and deliver such statement within the time specified in this section, shall be forever barred the right of claiming or recovering such lands or any interest or estate therein . . . in any court of law or equity."

No language could be more explicit to make the failure to deliver the statement within the time specified a bar, an absolute bar, to the recovery of the same, however strong might be the equitable claim to the land so lost.

This regulation is a reasonable one. In a crowded district, with a changing frontier population, it might well be required that the claim should be interposed at an early day.

It is not pretended that the appellant, or any one on his behalf, made the statement required by section four. Its absence bars his claim in every court either of law or equity.

For the two reasons stated—

1st. That the defendant below was in possession of the lot in question at the time of the passage of the act for the relief of the city of Denver and at the time of the entry of the lands made by the probate judge, by means of which she

---

[*] See the numerous cases cited in Cowen & Hill's Notes to Phillips's Evidence, note 174, " Presumptions."

became and was the party by law entitled to the deed from the probate judge; and,

2d: That the appellant, by omitting to sign and deliver the statement required by section four of the Territorial statute, became barred of the right to the lands, both in law and equity—

We are of the opinion that the judgment of the court below, dismissing the complaint, was correct, and that it must be

AFFIRMED.