MINNIE LOCKWITZ, RESPONDENT, *v.* LARSON AND
BONNEY, APPELLANTS.

1. *Statutory Construction—Town-site Entry—Right* of *Occupants.*
   Under the act of congress of March 2, 1867 (14 Stat. 541), the
   interests of the occupants attach simultaneously with the making
   of a town-site entry, and no person who may have occu-
   pied land on the town-site previous thereto, or may occupy
   such lands thereafter, but who was not a settler and occupant
   at the time of the entry, is a beneficiary under the act, nor can
   such person derive any benefit directly by reason of the entry.
2. *Same—Entry.*
   By the term "entry," under the act, is meant the filing of an
   application by the proper officer with the register of the land
   office, and proof showing the performance of the statutory
   conditions respecting the settlement and occupancy of the
   land as a town site.
3. *Same—Delay,*
   No delay on the part of the government in allowing the entry
   can affect the rights of those who were *bona fide* occupants at
   the time of filing the application and proof, or of those claim-
   ing through such occupants, provided the entry is ultimately
   made on the proof submitted with the application.

(No. 878.   Decided Feb. 9, 1898.)

Appeal from the Fifth district court, Juab county.
E. V. Higgins, *Judge.*

Action by Minnie Lockwitz against James H. Larson
and another to determine right to town-site entry. A
demurrer to defendants' applications being sustained,
they were stricken from the files upon motion, and de-
fendants appeal. *Affirmed.*

*Warner & Houtz,* for appellants.

*H. J. Dininny,* for respondent.

Bartch, J.:

This is a proceeding in the nature of a contest between the plaintiff and defendants, claimants by right of occupancy, to determine who is entitled to a deed for a certain parcel of land on the Eureka town site. It appears from the record that on January 23, 1891, the probate judge of Juab county made application at the United States land office at Salt Lake City to enter the town site of Eureka City pursuant to the act of congress of March 2, 1867. To this application some mineral claimants filed protests, but these were afterwards dismissed by the register and receiver, and on the proof offered by the town-site applicant his application was accepted, and allowed on the 26th of May, 1892. The money for the land included in the entry was paid, and a receipt issued, December 31, 1896. At the time of filing the application for the town-site entry one Michael L. Powers was the rightful owner of possession and occupant of the land in question, and at the time of the hearing herein, his rights were, through *mesne* conveyances, vested in the plaintiff. In their application for a deed to the land in dispute the defendants aver that the tract has been occupied by them, or their predecessors in interest, continuously since the 8th day of September, 1895, and that they now claim to be the rightful owners of the possession. It appears that at the hearing the court sustained a demurrer to their applications, and a motion to strike them from the files on the ground that parties claiming such a right under the town-site entry must show that they, or their predecessors in interest, were occupants when the application for entry was accepted, and the entry allowed; and this ruling of the court, having been assigned as error, constitutes the subject of appeal.

The appellants contend that they are occupants, within

the meaning and intent of the act of congress of March 2, 1867 (14 Stat. 541), which provides that "whenever any portion of the public lands of the United States have been or shall be settled upon and occupied as a town site, and therefore not subject to entry under the agricultural pre-emption laws, it shall be lawful" for the proper author-ities or officer " to enter at the proper land office, and at the minimum price, the land so settled and occupied, in trust for the several use and benefit of the occupants thereof, according to their respective interests," and that the execution of the trust as to the disposal of the lots " shall be conducted under such rules and regulations as may be prescribed by the legislative authority of the state or territory in which the same may be situated." Under this statute the town site of Eureka City was en-tered, and it will be noticed that the provision is that " the land so settled and occupied " may be entered for " the use and benefit of the occupants thereof." This means that those who are the actual settlers and occu-pants at the time when the entry is made are entitled to the benefit which may accrue by virtue thereof. The in-terests of such occupants attach simultaneously with the making of the entry, and no person who may have occu-pied land on the town site prior thereto, or may occupy such land thereafter but who was not a settler and occu-pant at the time of the entry, can derive any benefit di-rectly by reason of the entry. The officer who enters the land is the trustee, and the occupants are the *cestuis que trustent*, who are entitled to have the trust executed, and the land disposed of under such rules and regulations as the state or territory where the land is situated may prescribe. The legislature of Utah has enacted the nec-essary rules and regulations for the disposal of the land which may be so entered, and has provided that the lots

shall be conveyed to the rightful owner of possession, occupant or occupants, or to such person as might be entitled to the possession or occupancy. 2 Comp. Laws Utah 1888, c. 5, p. 144. It may be seen from the facts hereinbefore stated that all the parties to this suit claim because of possession and occupancy at the time when the entry was made. The plaintiff claims through certain *mesne* conveyances from the party who was in actual occupancy, and had the right of possession on the date the application to enter was filed, and when the proof was accepted and the entry allowed; and the defendants through actual occupancy and right of possession at the time of the payment of the money for the land entered. The question presented, therefore, is, when was the land in dispute entered as a town site, so that the title vested in the trustee, for the benefit of the occupants, or those entitled to the possession and occupancy? Did the title so vest on the 23d of January, 1891, when the application to enter the land was filed in the land office, or on the 26th of May, 1892, when the proof was accepted, and the entry allowed, or on the 31st of December, 1896, when the government price was paid, and the final receipt issued by the authorities of the land office? The determination of these questions depends largely on what the terms " entry " and " to enter " mean, and upon what acts must be performed by the officer to effect an entry or to enter land, within the meaning and intent of the act of congress. In *Chotard* v. *Pope*, 12 Wheat. 586, the supreme court of the United States defined the term " entry " to mean " that act by which an individual acquires an inceptive right to a portion of the unappropriated soil of the country, by filing his claim in the office of an officer known in the legislation of several states by the epithet of an entry-taker, and corresponding very much in his functions with the registers

of land offices, under the acts of the United States." Doubtless, in this sense the term has been used in the several acts of congress, referring to the appropriation of public lands of the United States at private sale, including the town-site laws. So the term "to enter," with reference to such public lands, means to acquire an inceptive right to a portion of the unappropriated soil of the United States by filing a claim with the register of the land office. When, then, these terms are used with reference to laws concerning the private sale of the public lands of the United States, they have a fixed and definite sense in the legal nomenclature of this country, like many of the terms borrowed from the common law, and their technical meaning will not be changed by construction. Therefore, by the term "entry," when speaking with reference to the appropriation of public land for a town site under the act of 1867, is meant the filing of an application by the proper officer with the register of the land office, and proof showing the performance of the statutory conditions respecting the settlement and occupancy of the land as a town site. By making such filing the officer acquires an "inceptive right" to the legal title to the land in trust, however, for the persons who are, at the time of the filing, the occupants and entitled to the possession of the land. If thereafter the application be accepted, the entry allowed, the purchase money paid, and patent issued, such patent will relate back to the date of the filing of the application and proof, and the trustee will be bound to convey the land to those who were the rightful occupants on the day of the filing of the application, or entitled to the occupancy, or to those who derive title to the land through such occupants. 6 Am. & Eng. Enc. Law. 649; *Shepley* v. *Cowan,* 91 U. S. 330; *Pomeroy* v.

*Wright*, 2 Land Dec. Dep. Int. 167; *Stringfellow* v. *Cain*, 99 U. S. 610; *Railway Co.* v. *Sanders*, 47 Fed. 604.

This is so because under the act of congress, when the conditions imposed thereby have been performed, the occupants of the land have acquired certain vested rights, one of which is to have a trust declared and established in their favor, and such trust inures to the benefit of the rightful occupant *eo instanti* upon filing with the register of the land office, by the proper officer, the application to enter the town site, together with requisite proof that the conditions of the act have been performed. The land is then regarded as withdrawn and segregated from the public domain. Thereafter no delay on the part of the government in allowing the entry can affect the rights of those who were *bona fide* occupants at the time of the filing of the application and proof, or of those claiming through such occupants, provided the entry is ultimately made on the proof submitted with the application; for, if the entry were allowed on other proof submitted at a subsequent day, question might be made whether the conditions imposed by the act had actually been performed on the prior day. Nor can the rights of the *cestuis que trustent* be jeopardized by any delay on the part of the government to recognize them by proper evidence of title. The issuing of the final certificate and patent is not made a prerequisite, under the act of 1867, to the establishment of the equitable rights of the occupants. Such certificate and patent do not confer the rights, although convenient, and probably necessary, to enforce them. They constitute the effect, but not the cause, and therefore a person who claims to have become an occupant of land on a town site after the date of filing the application, but before the issuance of the certificate and patent, is not a beneficiary under the act, unless his right of occupancy was acquired

through one who was a rightful occupant on the date of filing the application. *Hussey* v. *Smith*, 99 U. S. 20; *Sturr* v. *Beck*, 133 U. S. 541; *Castner* v. *Gunther* (Gil. 63), 6 Minn. 119; *Leech* v. *Ranck* (Gil. 332), 3 Minn. 448; *Cook* v. *Rice*, 2 Colo. 131; *Cofield* v. *McClelland*, 16 Wall. 331.

In the case at bar there is nothing in the record to show that the entry was not finally allowed on the application filed and proof submitted on the 23d of January, 1891, and we are of the opinion that under the facts shown to exist herein the entry was made on that day, and that the appellants, merely claiming to have become occupants thereafter, but showing no right of occupancy by virtue of one who was a rightful occupant on the day of entry, are not beneficiaries, within the meaning of the act of congress. The court therefore properly sustained the demurrer and motion to strike their application from the files. The judgment is affirmed.

ZANE, C. J., and MINER, J., concur.