[Civil No. 2433.  Filed September 21, 1926.]

[249 Pac. 551.]

# SAM CLARK, Y. C. QUIROZ and MANUEL QUIROZ, Appellants, v. GERALD JONES, Trustee of the Rowood Townsite, Appellee.

1. MINES AND MINERALS—DECISION OF COMMISSIONER OF GENERAL LAND OFFICE HOLDING MINING LOCATION VOID FOR WANT OF DISCOVERY LEFT LOCATORS IN POSSESSION GOOD AGAINST WORLD, EXCEPT UNITED STATES AND PERSONS CLAIMING UNDER IT. — Decision of Commissioner of General Land Office holding mining location void for want of discovery left locators in possession free to conduct further explorations and they could maintain such possession against world, except United States and persons claiming under it.

2. PUBLIC LANDS.—Townsite patent is inoperative as to lands known to be valuable for minerals, or discovered to be such before occupation or improvement under townsite title.

3. PUBLIC LANDS.—When townsite is entered and patent issued without knowledge of valuable mineral lands within boundaries, subsequent discovery. does not exclude land from operation of townsite patent.

4. PUBLIC LANDS—DELAY IN ISSUANCE OF TOWNSITE PATENT CAUSED BY DILATORY TACTICS OF MINERAL CLAIMANTS HELD NOT TO DEFEAT RIGHTS OF TOWNSITE CLAIMANTS, THOUGH MINERALS DISCOVERED BEFORE PATENT ISSUED (U. S. COMP. STATS., § 4791).—Where mining location was held void for want of discovery of minerals, interval of seven years between filing of townsite declaratory statement, pursuant to United States Revised Statutes, section 2387 (U. S. Comp. Stats., § 4791), prior to discovery of minerals and issuance of patent, which in large part was caused by dilatory tactics of mineral claimants in opposing proceedings, did not defeat rights of townsite applicants, though before patent was issued mineral claimants discovered valuable minerals.

5. PUBLIC LANDS.—Where land department, in holding mining claim void for want of discovery, expressly disclaimed passing on its mineral or nonmineral character, such decision did not exempt land from entry as townsite because of presence of minerals.

6. PUBLIC LANDS.—Effect of granting townsite patent containing land known to be valuable for minerals is simply to exclude such known mineral land from operation of patent.

7. PUBLIC LANDS—DISCOVERY OF MINERALS BETWEEN FILING OF DECLARATORY STATEMENT FOR TOWNSITE PATENT AND ISSUANCE OF PATENT DOES NOT GIVE LOCATORS OF MINING SUPERIOR RIGHT (U. S. COMP. STATS., § 4791).—When townsite patent issued, right of patentee became fixed and vested from time of entry of townsite by filing declaratory statement pursuant to United States Revised Statutes, section 2387 (U. S. Comp. Stats., § 4791), and locators of mining property did not acquire superior right to premises, even if they made discovery of minerals thereon before issuance of townsite patent.

See (1) 40 C. J., p. 777, n. 58, 58 New, p. 779, n. 71 New; 32 Cyc., p. 822, n. 78, 79. (2, 3) 32 Cyc., p. 840, n. 43, 44, 47. (4) 32 Cyc., p. 840, n. 48 New. (5, 6) 32 Cyc., p. 840, n. 43, 48 New. (7) 32 Cyc., p. 840, n. 48 New, p. 1037, n. 86.

APPEAL from a judgment of the Superior Court of the County of Pima. Alfred C. Lockwood, Judge. Affirmed.

Mr. John W. Mayes, for Appellants.

Messrs. Curley & Pattee, for Appellee.

JENCKES, Superior Judge.—On August 1, 1916, the appellants attempted to locate a mining claim, which they designated "Howard No. 2," upon the unappropriated public land of the United States in Pima county, Arizona. In December, 1917, the Commissioner of the General Land Department of the United States, upon a report of a mineral inspector of the department that no discovery of mineral had been made upon the claim, commenced an adverse proceeding before the register and receiver of the local land office at Phoenix, Arizona, to determine the

status of the location. A hearing was had in that proceeding during the month of September, 1918, and on December 28th, 1918, the register and receiver made their findings, which, according to the practice in the land department, were forwarded to the Commissioner of the General Land Office at Washington, who, on April 23d, 1919, rendered his decision holding the Howard No. 2 mining location to be null and void from its inception for want of a discovery of mineral upon the claim. This decision of the Commissioner, upon appeal to the Secretary of the Interior, was affirmed on December 29th, 1919.

On February 12th, 1917, appellee's predecessor in the office of the superior judge of Pima county, Arizona, filed in the United States Land Office a townsite declaratory statement on behalf of the occupants of what was therein designated as Rowood townsite, within the boundaries of which the said purported Howard No. 2 mining claim was embraced. Such declaratory statement was filed pursuant to the provisions of United States Revised Statutes, section 2387 (U. S. Comp. Stats., § 4791), which reads as follows:

"Whenever any portion of the public lands have been or may be settled upon and occupied as a townsite, not subject to entry under the agricultural preemption laws, it is lawful, in case such town be incorporated, for the corporate authorities thereof, and, if not incorporated, for the judge of the county court for the county in which such town is situated, to enter at the proper land office, and at the minimum price, the land so settled and occupied in trust for the several use and benefit of the occupants thereof, according to their respective interests; the execution of which trusts, as to the disposal of the lots in such town, and the proceeds of the sales thereof, to be conducted under such regulations as may be prescribed by the legislative authority of the state or territory in which the same may be situated."

Thereafter, the precise date of which does not appear from the record before us, the appellee's said predecessor, as judge of the superior court of Pima county, Arizona, pursuant to said statute, paid the minimum fee required, and received final certificate to the land embraced within the townsite plat, and in March, 1924, received the patent of the United States therefor.

After the issuance of the patent aforesaid, this action of ejectment was brought by appellants to recover from appellee's predecessor in the trust created by the entry of the land, under section 2387, *supra,* the land covered by the said alleged Howard No. 2 mining claim. The complaint describes the premises according to the original location notice and the book and page of its filing in the office of the county recorder of Pima county, Arizona, and alleges that a discovery of mineral thereon had been made long before appellee's said predecessor made entry of the said townsite. To the complaint appellee's predecessor pleaded, as a bar to appellant's said right of action, the aforesaid decision of the Commissioner of the General Land Office, and, appellant's demurrer thereto being upon hearing overruled, the trial court sustained the plea in bar and entered judgment for the appellee, from which judgment this appeal is prosecuted.

Appellant's four assignments of error present but one proposition of law, viz.: What effect is to be given in the determination of the case to the decision of the Commissioner of the General Land Office holding the Howard No. 2 mining location to be null and void for want of discovery? The effect of that decision was not to oust appellants from the possession of the land, nor even to determine that they had no further right to such possession, but, on the contrary, as stated by the Secretary of the Interior in affirming the Commissioner's decision, left them

"in possession, free to conduct such further explorations as they may desire," and such possession they may maintain against the world, save and except the United States and persons claiming by legal or equitable title under it.  32 Cyc. 822.

Being predicated upon evidence adduced upon the hearing before the register and receiver in September, 1918, the Commissioner's decision must, of necessity, be determinative of the standing of the alleged mining location as of a time not later than the time of that hearing, and it would be a bar to appellant's right of action in the event only that the evidence adduced before the trial court upon the hearing of the plea in bar shows that the appellee had initiated a right to the possession of the premises in controversy adverse to appellants prior to such time, and had maintained it in unbroken sequence down to the date of the filing of the complaint herein.

We are not now concerned with whether or not appellants made a discovery of mineral upon the alleged mining claim subsequent to September, 1918, because the trial court by sustaining the plea in bar did not permit that issue to be tried. The question for our determination is: When did appellee's right to the possession of the premises embraced within the boundaries of the townsite conveyed to him by the United States patent attach?  If before the hearing in the office of the register and receiver of the local land office in September, 1918, then the trial court did not err in sustaining the plea in bar; if after that hearing, then the plea in bar ought to have been overruled.

A townsite patent is "inoperative as to all lands known at the time to be valuable for their minerals, or discovered to be such before their occupation or improvement for residence or business under the townsite title." *Deffeback* v. *Hawke,* 115 U. S. 392, 29 L. Ed. 423, 6 Sup. Ct. Rep. 95 (see, also, Rose's

U. S. Notes); *Reilly* v. *Berry,* 2 Ariz. 272, 15 Pac. 26. But, when a townsite is entered and a patent therefor issued and it is not known at the time that there are valuable mineral lands within its boundaries, a subsequent discovery of minerals within the townsite does not exclude such mineral land from the operation of the townsite patent. *Davis* v. *Wiebbold,* 139 U. S. 507, 35 L. Ed. 238, 11 Sup. Ct. Rep. 628.

"The time when the character of the land within a claimed townsite is to be determined is when application to enter is made." 1 Lindley on Mines, (3d Ed.) 341, par. 170; *Lockwitz* v. *Larson,* 16 Utah 275, 52 Pac. 279.

In the latter case the Supreme Court of Utah, in considering the identical question presented here, said:

"The question presented, therefore, is, when was the land in dispute entered as a townsite, so that the title vested in the trustee for the benefit of the occupants, or those entitled to the possession and occupancy? Did the title so vest on the 23d of January, 1891, when the application to enter the land was filed in the land office, or on the 26th of May, 1892, when the proof was accepted, and the entry allowed, or on the 31st of December, 1896, when the government price was paid, and the final receipt issued by the authorities of the land office? The determination of these questions depends largely on what the terms 'entry' and 'to enter' mean, and upon what acts must be performed by the officer to effect an entry or to enter land, within the meaning and intent of the act of Congress. In *Chotard* v. *Pope,* 12 Wheat. (U. S.) 586 [6 L. Ed. 737] the Supreme Court of the United States defined the term 'entry' to mean 'that act by which an individual acquires an inceptive right to a portion of the unappropriated soil of the country, by filing his claim in the office of an officer known in the legislation of several states by the epithet of an entry taker, and corresponding very much in his functions with the registers of

land offices, under the acts of the United States.' Doubtless, in this sense the term has been used in the several acts of Congress, referring to the appropriation of public lands of the United States at private sale, including the townsite laws. So the term 'to enter,' with reference to such public lands, means to acquire an inceptive right to a portion of the unappropriated soil of the United States by filing a claim with the register of the land office. When, then, these terms are used with reference to laws concerning the private sale of the public lands of the United States, they have a fixed and definite sense in the legal nomenclature of this country, like many of the terms borrowed from the common law, and their technical meaning will not be changed by construction. Therefore, by the term 'entry,' when speaking with reference to the appropriation of public land for a townsite under the Act of 1867, is meant the filing of an application by the proper officer with the register of the land office, and proof showing the performance of the statutory conditions respecting the settlement and occupancy of the land as a townsite. By making such filing the officer acquires an 'inceptive right' to the legal title to the land in trust, however, for the persons who are, at the time of the filing, the occupants and entitled to the possession of the land. If thereafter the application be accepted, the entry allowed, the purchase money paid, and patent issued, such patent will relate back to the date of the filing of the application and proof, and the trustee will be bound to convey the land to those who were the rightful occupants on the day of the filing of the application, or entitled to the occupancy, or to those who derive title to the land through such occupants. 6 Am. & Eng. Enc. Law, 649; *Shepley* v. *Cowan*, 91 U. S. 330, 23 L. Ed. 424 (see, also, Rose's U. S. Notes); *Pomeroy* v. *Wright*, 2 Land Dec. Dep. Int. 167; *Stringfellow* v. *Cain*, 99 U. S. 610, 25 L. Ed. 421 (see, also, Rose's U. S. Notes); *Railway Co.* v. *Sanders* (C. C.), 47 Fed. 604. This is so because, under the act of Congress, when the conditions imposed thereby have been performed, the occupants of the land have acquired certain vested rights, one of which is to have a trust

declared and established in their favor, and such trust inures to the benefit of the rightful occupant, *eo instanti,* upon filing with the register of the land office, by the proper officer, the application to enter the townsite, together with requisite proof that the conditions of the act have been performed. The land is then regarded as withdrawn and segregated from the public domain. Thereafter, no delay on the part of the government in allowing the entry can affect the rights of those who were *bona fide* occupants at the time of the filing of the application and proof, or of those claiming 'through such occupants, provided the entry is ultimately made on the proof submitted with the application; for, if the entry were allowed on other proof submitted at a subsequent day, question might be made whether the conditions imposed by the act had actually been performed on the prior day. Nor can the rights of the *cestuis que trustent* be jeopardized by any delay on the part of the government to recognize them by proper evidence of title. The issuing of the final certificate and patent is not made a prerequisite, under the Act of 1867, to the establishment of the equitable rights of the occupants. Such certificate and patent do not confer the rights, although convenient, and probably necessary, to enforce them."

It will be noted that there was an interval of seven years between the time of the filing of the townsite declaratory statement in February, 1917, and the issuance of the patent in March, 1924. This long delay was principally occasioned by the dilatory tactics of the appellants in opposing at every step the proceedings looking to the patent of the townsite. Appellant's contention is that some time after the decision of the Commissioner of the Land Department and "many years" before appellee received patent for the townsite, they made discovery of valuable mineral upon their Howard No. 2 mining location. While appellants were no doubt within their rights in pursuing every means which they did pursue in an effort to have their claim to the premises upheld,

they are in no position to put the appellee to a disadvantage because of the delay occasioned thereby, and besides we have seen that mere delay on the part of the government officials in issuing the patent does not operate to cut off any rights of the townsite applicants which have theretofore accrued. *Lockwitz* v. *Larson, supra.*

Appellants further urge that, as the effect of a decision of the land department adverse to an applicant for patent of a mining claim is considered merely in the nature of a nonsuit and leaves him in the same situation with respect to his location as though no application for patent had been made, the same effect ought to be given to the decision of the Commissioner pleaded as a bar in this case. But, since the decision of the Supreme Court of the United States in the case of *Cameron* v. *United States,* 252 U. S. 450, 64 L. Ed. 659, 40 Sup. Ct. Rep. 410 (see, also, Rose's U. S. Notes Supp.), the right of the land department of the government to institute summary proceedings looking to a determination of the status of mining locations upon the public lands of the United States, and the conclusive effect to be given to its findings therein, is no longer open for discussion.

The further proposition is advanced by appellants that the land department by its findings held the land embraced within the Howard No. 2 mining claim to be mineral in character and that, therefore, under the laws of the United States such land was not subject to entry as a townsite, for the reason that land known at the time to be valuable for minerals may not be so located. The effect of the granting of a townsite patent to land which embraced within its boundaries land known to be valuable for minerals is simply to exclude such known mineral land from the operation of the patent. *Deffeback* v. *Hawke, supra.* However, an examination of the record discloses that the land depart-

ment in its decision expressly disclaimed passing upon the question of the mineral or nonmineral character of the land, so that there is no basis for this contention of appellants.

Appellants have seized upon the language of the Secretary of the Interior hereinbefore mentioned, that ''the effect of the department decision is to leave the mineral claimant in possession free to conduct such further explorations as he may desire,'' as recognizing their superior right to the premises if they were able to make a discovery of mineral thereon before the issuance of the townsite patent. Such is not the correct construction to be placed upon this language. Appellants were in possession and had a right to maintain such possession against everyone, except the United States and anyone holding from it by right or title superior to theirs, as already shown. The townsite patent had not yet issued, and it did not, as a matter of fact, issue for four or five years thereafter. It was quite within the range of possibility that it might never be issued—the application might have been withdrawn or denied. Until the patent issued upon the original application and declaratory statement filed before the hearing in September, 1918, the appellee was in no position to show a right to the premises superior to that of appellants. When the patent did finally issue in March, 1924, the right of the appellee to the land, theretofore inchoate and unsubstantial, became fixed and vested, not from the date of the patent merely, but from its inception at the time of the entry of the townsite by the filing of the declaratory statement by appellee's predecessor in office.

The trial court did not commit error in sustaining appellee's plea in bar, and the judgment is accordingly affirmed.

McALISTER, C. J., and ROSS, J., concur.