NORTHERN PAC. R. CO. v. AMACKER et al.

(Circuit Court, D. Montana. November 14, 1892.)

1. PUBLIC LANDS—PRE-EMPTION—ABANDONMENT.
   One S. filed his declaration of intention to claim certain land near Helena, Mont., under the pre-emption law. He built a cabin, and lived there part of the year 1869. He then removed to Helena, and resided there nine years. Thereafter he resided in Butte City. He failed to comply in any way with the pre-emption law after leaving the land. *Held*, that he had abandoned his right to purchase when he left the land.

2. SAME—HOMESTEAD ENTRY—RAILROAD LAND GRANT.
   In 1864 the Northern Pacific Railroad received its land grant, which was to attach when the line should be definitely fixed, and a plat filed in the general land office. The general route was located February 1, 1872. On May 3, 1872, one M. filed an application to enter certain land as part of his homestead claim. Notice of the withdrawal of the lands at the time of the fixing of the general route of the railroad from sale, entry, or pre-emption was filed in the local land office in Helena, Mont., May 6, 1872. The act of April 21, 1876, provided that entries made in good faith by actual settlers under any law of the United States upon lands within the

limits of any land grant prior to the notice of the withdrawal of such lands from entry shall be confirmed, and patents shall issue. *Held,* that M. was entitled to perfect his title under this act.

**3. SAME—CANCELLATION OF ENTRY—PRESUMPTIONS.**

On December 1, 1874, the commissioner of the general land office wrote to the register and receiver of the land office at Helena, Mont., that M.'s entry was held for cancellation, on the ground that the right of the railroad had attached prior to the entry. On July 3, 1879, the register and receiver wrote to the commissioner of the general land office that M. had been notified to show cause why his entry should not be canceled, that no action had been taken on such notice, and recommending the canceling of the entry. September 11, 1879, the acting commissioner of the general land office replied, canceling the entry. On July 2, 1882, the definite route of the plaintiff's road was fixed opposite this land, and a plat filed with the commissioner of the general land office. *Held,* that it should be presumed that the land officers performed their duty, and served M. with due notice of the proceedings to cancel his entry. Cofield v. McClelland, 16 Wall. 331, followed.

**4. SAME.**

On the cancellation of M.'s entry the land was restored to the public domain, as free for occupation or purchase as if the entry had never attached thereto.

**5. SAME—HOMESTEAD ENTRIES—ACT JUNE 15, 1880.**

Subsequent to this cancellation, the act of June 15, 1880, was passed, which provided in section 2 that any persons who had theretofore, under any of the homestead laws, entered lands properly subject to entry, or any persons to whom the rights thereby acquired had been attempted to be conveyed by bona fide instrument in writing, might entitle themselves to the lands by paying the government price, etc. M. died without taking any steps to acquire title under this statute. Before the map of definite location of the railroad was filed, but after such location, his widow filed an application to be allowed to perfect the entry. *Held,* that the right given by this act to M. or to his widow, if it applied to her at all, was a mere personal privilege, not constituting any interest or right in the land, and, as the privilege was not exercised before the definite location of the road, the land was then such as the United States had full title to, "not reserved, sold, granted, or otherwise appropriated, and free from any pre-emption or other claim or right," and hence the title vested in the railroad company at that time.

At Law. Action in the nature of ejectment by the Northern Pacific Railroad Company against Maria Amacker and others. Judgment for plaintiff.

F. M. Dudley and W. E. Cullen, for plaintiff.

Thos. C. Bach and Massena Bullard, for defendants.

KNOWLES, District Judge. This is an action in the nature of ejectment, brought by plaintiff to recover from defendants the possession of the S. 1-2 of the N. W. 1-4 of section 17, in township 10 N., range 3 W. of the principal meridian of Montana. Plaintiff alleges that it is the owner in fee simple of said land; that defendants have ousted and ejected it therefrom, and withhold the possession thereof from it. Defendants, in their answer, deny the allegations of ownership of said lands set forth in the complaint, and those concerning the ouster of plaintiff, but admit that they are in possession of the same, and are holding the same against plaintiff. The evidence in this case fully establishes as a fact that plaintiff received from the United States, in 1864, a grant of all odd sections of public land not

mineral, to the amount of 20 odd sections per mile on each side of said plaintiff's railroad line which it should establish through the territory of Montana, and whenever the United States should have full title to the same, not reserved, sold, granted, or otherwise appropriated, and free from pre-emption or other claims or rights at the time the line of said road should be definitely fixed and a plat thereof filed in the office of the commissioner of the general land office; that plaintiff accepted the grant, and constructed the road named in the act making the same; that the land in dispute is an odd section within 40 miles of the definite line of said road, fixed as required by said act.

In October, 1868, one William M. Scott, it appears, filed in the United States land office at Helena, Mont., his declaratory statement to the effect that it was his intention to claim the said tract of land as a pre-emption right under the provisions of the act of congress of September, 1841. In 1869 he built a cabin on the same, and lived there until the fall of that year, when he left the same, and moved to the city or town of Helena, where he lived until 1878, when he removed to Butte, Mont. He never returned to said land after leaving the same, and never subsequently exercised any acts of ownership over the same. Helena is but a short distance from where this land is situate,—less than three miles.

On May 3, 1872, William McLean filed an application in the United States land office at Helena, Mont., to enter the same as a part of his homestead claim. It does not appear as to whether or not he ever resided upon said land, or ever made any improvements upon the same. On December 1, 1874, the commissioner of the general land office wrote to the register and receiver of the United States land office at Helena, Mont., informing them that this homestead entry of McLean's, with others, was held for cancellation, on the ground that the same was made subsequent to the time at which the right of the Northern Pacific Railroad Company attached to the same as a part of an odd section within their grant, and directing them to serve notice upon McLean to show cause why it should not be canceled. It appears that the general route of the Northern Pacific Railroad opposite to the land in dispute was located about February 1, 1872. Whether any notice was served, or anything further done at that time, does not appear. On the 3d day of July, 1879, the register and receiver of the said Helena land office, the same being J. H. Moe and F. P. Sterling, respectively, wrote to the commissioner of the general land office the following letter:

"We have the honor to report that June 2nd, 1879, the applicants to the following homestead entries were duly notified in accordance with your circular of December 20th, 1873, to show cause within thirty days from date of said notice why their entries should not be canceled, and up to this date no action has been taken: * * * No. 819, William McLean, W. 1-2, N. W. 1-4, S. E. 1-4, N. W. 1-4, and S. W. 1-4, N. E. 1-4, of sec. 17, 10 N., 3 W., made May 3d, 1872. We would respectfully recommend that these homestead entries be canceled."

On September 11, 1879, the acting commissioner of the general land office wrote to the register and receiver of the Helena land office the following official letter:

"I am in receipt of your letters of June 4th and July 3d last, stating that the applicants in the following homestead entries were duly notified, in accordance with the circular of December 20th, 1873, to show cause why their entries should not be canceled, and that no action had been taken by them, and recommending for cancellation the said entries, viz.: * * * No. 819, made May 3d, 1872, by William McLean, W. 1-2, N. W. 1-4, S. E. 1-4, N. W. 1-4, and S. W. 1-4, N. E. 1-4, sec. 17, 10 N., R. 3 W. * * * In view of the fact that the above entries were he'd for cancellation in Nov. and Dec., 1874, and of the further facts that the parties have allowed the limitation provided by statute to expire without making final proof as required, and have failed to establish their claims after due notice given, the said entries are hereby canceled."

The inference from these letters is that, as a fact, there had been no cancellation of McLean's entry until this letter of September 11th.

On July 2, 1882, the definite route of plaintiff's road was fixed opposite to where this land was located, and a plat thereof filed with the commissioner of the general land office. In August, 1882, William McLean died. On or about the 15th day of March, 1883, Maria McLean, as the widow of William McLean, made her application to enter said land, stating in the same that she applies to perfect the said homestead entry made by her husband on the 3d day of May, 1872, and that her claim thereto is based upon the second section of the act of congress approved June 15, 1880, and section 2291 of the Revised Statutes of the United States. Plaintiff contested this application. On the 20th day of February, 1885, the commissioner of the general land office sustained the application of the said Maria McLean. Plaintiff appealed from this decision to the secretary of the interior. On March 28, 1887, H. L. Muldrow, as acting secretary of said department, affirmed the decision of the commissioner of the general land office, and the application of Maria McLean was again sustained, and a patent to said land awarded her.

The provisions of the United States statutes considered in deciding this question are as follows:

Act of April 21, 1876:

"That all pre-emption and homestead entries, or entries in compliance with any law of the United States, of the public lands, made in good faith, by actual settlers, upon tracts of land of not more than one hundred and sixty acres each, within the limits of any land grant, prior to the time when notice of the withdrawal of the lands embraced in such grant was received at the local land office of the district in which such lands are situated, or after their restoration to market by order of the general land office, and where the pre-emption and homestead laws have been complied with, and proper proofs thereof have been made by the parties holding such tracts or parcels, they shall be confirmed, and patents for the same shall issue to the parties entitled thereto."

"Sec. 2. That when at the time of such withdrawal as aforesaid valid pre-emption or homestead claims existed upon any lands within the limits of any such grants, which afterwards were abandoned, and under the decisions and rulings of the land department were re-entered by pre-emption or homestead claimants who have complied with the laws governing pre-emption or homestead entries, and shall make the proper proofs required under such laws, such entries shall be deemed valid, and patents shall issue therefor to the person entitled thereto."

See Supplement to the Revised Statutes of the United States, p. 99. Section 3 of said act refers to entries made subsequent to the expiration of a land grant, and has no reference to any such ques-

tion as is presented in this case. The notice of the withdrawal of the lands, at the time of the fixing of the general route of plaintiff's road, from sale, entry, or pre-emption, by the commissioner of the general land office, was filed in the local land office at Helena, Mont., on May 6, 1872.

Section 2, Act 1880, is as follows:

"That persons who have heretofore under any of the homestead laws entered lands properly subject to such entry, or persons to whom the right of those having so entered for homesteads may have been attempted to be transferred by bona fide instrument in writing, may entitle themselves to said lands by paying the government price therefor, and in no case less than one dollar and twenty-five cents per acre; and the amount heretofore paid the government upon said lands shall be taken as part payment of said price: provided, this shall in no wise interfere with the rights or claims of others who may have subsequently entered such lands under the homestead laws." 21 St. U. S. 238.

Under the issues presented in this case, the burden of proof was cast upon plaintiff, and it must rely on the strength of its own title. The grant to the Northern Pacific Railroad Company was one in praesenti, and conveyed to it the legal title to all odd sections of public land, not mineral, on each side of the line of its road as definitely fixed, to the extent of 20 sections, in Montana, it then being a territory, or, in all, 40 sections per mile, whenever the United States should have full title thereto, and they were not reserved, sold, granted, or otherwise appropriated, and free from pre-emption or other claim or right, at the time the route of its road should be definitely fixed, and a plat thereof filed in the office of the commissioner of the general land office. Until the road was thus definitely fixed, the grant was in the nature of a float; then it received precision, and became attached to certain and specific land as of the date of the grant. St. Paul & P. R. Co. v. Northern Pac. R. Co., 139 U. S. 1, 11 Sup. Ct. Rep. 389; Salt Co. v. Tarpey, 142 U. S. 241, 12 Sup. Ct. Rep. 158; Wisconsin Cent. R. Co. v. Price Co., 133 U. S. 496, 10 Sup. Ct. Rep. 341. If at the time of the fixing of the definite route of plaintiff's road it transpired that any portion of the odd sections on each side of its road as above described was in such a condition that the United States did not have full title to the same, or the government had reserved, sold, granted, or otherwise appropriated them, or they were not free from pre-emption or other claims or rights, they did not pass to plaintiff in its grant, and it was entitled to others, as provided by law, in lieu thereof.

The ruling of the commissioner of the general land office or the secretary of the interior did not determine any right of plaintiff to the land in dispute. The ruling of the land department does not determine the right to or ownership of land when the government has parted with the same, but only as to whether the government should issue or not a patent to the land claimed by the applicant. Railroad Co. v. Wright, 51 Fed. Rep. 68. The court is therefore called upon to determine the question as to whether the land did or did not pass to plaintiff in its grant. It is claimed that by virtue of section 6 of the said act, making the grant to plaintiff, the odd sections of public land, which include the land in dispute, on each side

of the general route of plaintiff's road, to the extent of 20, were withdrawn at the date of the fixing of such general route from entry, sale, and pre-emption. The general route of plaintiff's road, as we have seen, was fixed on February 21, 1872. Admitting this to be true, and it becomes necessary to inquire what was the status of this land at that time. Scott had filed his application to pre-empt the same, but he left it in 1869, and never returned thereto, or afterwards made any claim thereto. In order that a party should have the benefit of the pre-emption laws, it must appear that his residence on the land claimed was both continuous and personal. Bohall v. Dilla, 114 U. S. 47, 5 Sup. Ct. Rep. 782. The pre-emption laws give a right of purchase of land from the United States, and a preference to persons who have complied with their terms over other claimants. Frisbie v. Whitney, 9 Wall. 187; Yosemite Valley Case, 15 Wall. 77. It is not a vested interest in land. This right may be abandoned. Whenever a person leaves property of which he is possessed, without any intention of reclaiming the same again, he abandons it. Richardson v. McNulty, 24 Cal. 339; Judson v. Malloy, 40 Cal. 299. A right may be abandoned as well as property. 1 Amer. & Eng. Enc. Law, tit. "Abandonment." The leaving of said land by Scott; the failure in any way to comply with the pre-emption laws after leaving the same; his removing to the town of Helena, but a short distance from the land, and remaining there, following his vocation as a plasterer, for nine years, and then his removing to Butte City, Mont., and making that his residence up to the date of trial,—must be considered as an abandonment by Scott of all right he had under the pre-emption laws to a preference in purchasing said land he had acquired by his filing his application to purchase the same, and his residence thereon. What Scott's intention was may be shown by circumstances. The circumstances, I think, show that his intention was to relinquish whatever rights he had to pre-empt this land. When did this intention take place? At the time he left the land, must be the answer. He left the land, and his subsequent conduct shows he had no intention of returning to it. There is no fact which would have any tendency to show that this intention took possession of him at any other time than when he left it. If the land was withdrawn from market by virtue of said section 6, the law withdrew the same, and not the order of the secretary of the interior. There are several decisions of the federal courts that hold, in view of the above interpretation of the said section 6, that the application of McLean to enter as a homestead said land at the time he did was a nullity. About the time, however, of the location of the general route of plaintiff's road, there were rendered several decisions of the land department to the effect that the land was not withdrawn from market until the filing of a map of such route in the local land offices in the state and territories through which such route lay. Then it was that the local offices had notice of the fixing of the general route. Under this ruling, the filing of the application of McLean was in time. With a view of relieving men who had filed under this ruling, the act of April 21, 1876, was passed, and, according to my view, corrected any error in that respect.

There was another view under which that law would have cured any defect in McLean's filing. By virtue of certain other rulings of the land department it was held, if there existed a pre-emption application on file at the time of the filing of the map of the general route with the commissioner of the land office or secretary of the interior, the land did not pass to the plaintiff, but was excluded from its grant. I believe the reasoning which resulted in this ruling was based upon the view that the provisions of the act which excludes certain lands from the grant of plaintiff which were in a certain condition at the time of the definite fixing of plaintiff's road applied to the fixing of the general route of its road. If Scott's claim was a subsisting one at the time of the fixing of the general route of plaintiff, under this ruling it did not pass to plaintiff. In view of this ruling, the second section of the said act of 1876 was passed. With this view of the law the ruling of acting secretary of the interior in considering the application of Mrs. McLean, now Maria Amacker, was correct, if she could be subrogated to the rights of her husband, McLean, under the law of June 15, 1880; for the land, not passing to plaintiff, was subject to entry. The secretary was not confronted with the fact of the abandonment of Scott before this general route was fixed. The intention of congress was to validate all pre-emption and homestead entries made under these rulings of the land department, whether erroneous or not, where the applicants complied with the pre-emption and homestead laws. If section 6 bears the construction which the land department has given the same, as well as some courts, it should be considered as modified by this act of 1876.

Under the view which this court has held of the provisions of said section 6 of the grant to plaintiff, McLean's application was valid. In the case of Railroad Co. v. Sanders, 46 Fed. Rep. 239, and 47 Fed. Rep. 604, this court held that the effect of section 6 of said act was not to withdraw any lands from sale, entry, or pre-emption at the time of the filing of the plat of the general route of plaintiff's road. The language is that the lands hereby granted—that is, by the act in which said section is found—shall be reserved from sale, entry, and pre-emption. In the case of Barney v. Railroad Co., 117 U. S. 228, 6 Sup. Ct. Rep. 654, the supreme court, in considering a similar grant, defined the term "granted lands," and said: "They are those falling within limits specially designated, and the title to which attached when the lands are located by an approved and accepted survey of the line of the road filed in the land department as of the date of the act of congress." In several cases the supreme court has held that the title attaches only when the route of the road is definitely fixed. St. Paul & P. R. Co. v. Northern Pac. R. Co., supra; Salt Co. v. Tarpey, supra; Wisconsin Cent. R. Co. v. Price Co., supra. The granted lands had not then been designated and made known at the time of the location of the general route of plaintiff's road, and not until the location of the definite route thereof. I do not see, then, how they could be reserved from sale, entry, and pre-emption until the definite route of said road was fixed, and they became known. The view that unknown and undescribed lands can be withdrawn from sale, entry, or pre-emption does not seem to me possible. I know it is sometimes

claimed that the general route should be substantially the same as the fixed route. There is nothing in the law which requires this, and, as a matter of fact, this is not at all places the same, even substantially.

There is one matter for consideration in considering when the local land office had notice of the withdrawal of the lands along the general route of plaintiff's road. If they were withdrawn by law, then there was notice of this law, when approved by the president. But I do not think that the above act of 1876 had this in mind. It was endeavoring to make valid entries made under rulings of the land department, and the notice referred to was the one given by the general land office to the local offices. In any view, except under the provisions of section 2 of the act of 1876, the filing of McLean was a valid one, and it was not valid under that section on account of the abandonment by Scott of his rights before the filing of the plat of the general route of plaintiff's road. McLean could have legally perfected his title, according to my view. He did not do this. There is nothing to show that he resided on the same, or in any way complied with the homestead laws. In accordance with the rules of the land department, notice was served on him that he should within 30 days show cause why his entry should not be canceled. He failed to show cause, and on the 11th day of September, as before stated, his entry was canceled, because he had not complied with the law in making proper proofs.

It was urged by defendants, in the argument of this cause, that it did not appear that proper notice was given to McLean. The register and receiver, in their letter of July 3, 1879, recite that McLean had, among others, received due notice, in accordance with the circular of the commissioner of the general land office, to show cause why his entry should not be held for cancellation. In the letter of September 11, 1879, the commissioner of the general land office recites that due notice was given McLean. My attention was not called to any law providing for preserving these notices, or the manner of the service thereof. I think, under these circumstances, this comes within the rule expressed by the supreme court in the case of Cofield v. McClelland, 16 Wall. 331. In that case the court was considering a statute of the territory of Colorado that required a probate judge to give a certain notice of the entry of a town site, under the act of congress. There was a failure of proof as to this notice, and in regard to the matter the court said:

"We think this is a case in which the presumption applies that the officer has done his duty, especially as no provision was made in the act for procuring evidence that notice had been published. The case comes within the rule so well settled in this court that the legal presumption is that the surveyor, register, governor, and secretary of state have done their duty in regard to the several acts to be done by them in granting lands, and therefore surveys and patents are always received as prima facie evidence of correctness."

What was the effect of the cancellation of McLean's entry? In the case of Galliher v. Cadwell, 145 U. S. 368, 12 Sup. Ct. Rep. 873, the supreme court said of the cancellation of a homestead entry under circumstances almost identical with the one at bar:

"At that time, and by that act, all her rights of every kind and nature were ended, and the land was fully restored to the public domain, free for occupation and purchase by any other citizen, as though there never had been any semblance of occupation or entry."

Taking this rule, and applying it to this case, we find that the land in dispute was, on the 15th day of June, 1880, when the act above recited was passed, as free for occupation and purchase as though there had never been the entry of McLean attached thereto. What was the effect of that act? It did not grant to McLean any interest in the land in dispute. It did not amount to a sale or an entry of the land. He had the privilege to enter the land until the rights of others attached thereto. He certainly could not wait indefinitely before exercising this privilege or right. He did nothing towards exercising this right for over two years, and died without making any move to exercise this privilege after the same was given him by that act. This privilege was not a claim upon the land. In the case of Railroad Co. v. Sanders, supra, this court took occasion to consider to a limited extent the term "claim" as used in the grant to plaintiff, and then said:

"I would not say that every assertion of title to land would be entitled to the term 'claim.' Perhaps acts sufficient should accompany the assertion of title to entitle the claimant to a standing in a court of justice to contest the right to the possession of the premises."

The mere privilege to enter land, unaccompanied by any acts, if treated as a claim, would incumber all the public domain subject to entry and pre-emption to a claim, for every citizen has the privilege of entering or pre-empting the same. By virtue of the act itself under which defendants claim this privilege of entry or purchase of the land, concerning which this privilege or right was given, it was subject to entry as a homestead by any qualified citizen at any time before this right was exercised. Certainly, then, the intention of congress was not to incumber this land with a claim in favor of McLean. It is urged, however, that the provision of the statute making the grant to plaintiff is that the land which passes to it must be free from any right as well as any claim at the time of the definite fixing of its road. The term "right," as here used, does not appear to me to be very definite, and its legal meaning not altogether certain. It will be observed that the land must be free from this right. There is a difference between a right which is given an individual, and a right attached to land. Bouvier, in his Law Dictionary, defines "right" to be "a well-founded claim." In the case of Newkerk v. Newkerk, 2 Caines, 345, the court said, "Right is equivalent to 'all right.'" "Right" and "estate" are synonymous, at least in wills, with each other. Rapalje & Lawrence's Law Dictionary, in defining "right," said of it: "Right to bring an action for possession of land given the owner." In some states the action to recover the possession of land is termed the "action of right." In such an action the plaintiff claims some estate in the land which is the subject of the action which entitled him to the possession thereof. I feel confident that the right mentioned in plaintiff's grant was some estate in land, and not a privilege which pertained to the individual; and I cannot think that the said act of 1880

gave to McLean any right in the land. If so, it was in some way a grant to some estate in the land. Such, I am sure, was not the intention of congress in passing that act. If an estate in the land, would it pass to his heirs or administrator? How would it be subject to distribution? The suggestion of such questions show that certainly no estate of any kind was granted to McLean in the land.

There is one other point presented in considering that statute. It is very doubtful as to whether any right or privilege was given to Mrs. McLean thereunder. The widow is not named therein as a beneficiary. In the case of Galliher v. Cadwell, supra, when considering this statute the supreme court said:

"And the argument is worthy o' consideration that because in some acts of congress she is specifically named as entitled to rights originally vested in her husband, and the omission to specify her in the act in question was an intentional exclusion of her from the privileges named therein, and that congress did not intend to grant to others than the homesteader and the persons holding under him by instrument in writing any rights by reason of his incompleted homestead entry."

In support of this view the court cites Suth. St. Const. § 327, and cases cited. In looking at that section we find this language:

"Where a statute enumerates the persons or things to be affected by its provisions, there is an implied exclusion of others; there is a natural inference that its application is not intended to be general."

While the court in that case rested its decision upon the ground of laches, still, all the way through the same, it treats the fact that the widow was not named in the statute of 1880 as an important one in the consideration of the case. I do not see how the provision of section 2291, Rev. St. U. S., can be considered a supplement to that of 1880, above named. That statute applies to another directly. The said statute of 1880 does not purport in any way to supplant or take the place of any part of said section. It is an independent statute by itself. While in pari materia with the other statutes for the disposal by general laws of the public domain, and to be construed with them, there is nothing which will warrant a court in taking a clause of one statute, which applies to a particular subject and condition, and make it apply to a totally distinct statute. But, allowing that part of said section which gives the privilege to a widow to complete the homestead entry of her husband applies, and can it be said that it conveys any estate to her in the land,—any interest in it whatever? We have seen the land become public domain, free to any citizen to occupy and pre-empt or enter the same upon the cancellation of McLean's entry. Considering, then, all of these statutes, and it appears to me that the land in dispute was such as the United States had full title to, not reserved, sold, granted, or otherwise appropriated, and free from any pre-emption or other claim or right, at the time when the definite route of plaintiff's road was fixed, and a map thereof filed in the office of the commissioner of the general land office. By the terms of the grant it then passed to plaintiff. Neither McLean nor his widow had then exercised the privilege granted them, if any was granted to the latter, by the act of 1880. The right granted to McLean by the act of 1876, above referred to,

was lost by his failure to comply with the statute that required his final proofs to be made within a certain time, and the cancellation of his entry in 1879. Considering, as I have steadily maintained we should, the condition of the land at the time the definite line of plaintiff's road was fixed, and the grant to it received precision, I cannot see how I can reach any other conclusion than that plaintiff is the owner of the land in dispute. I therefore find that the plaintiff is the owner of the land described in the complaint herein, and entitled to the possession thereof; that defendants are in possession of the same without its consent, and wrongfully. It is therefore ordered that judgment be entered in this case in favor of plaintiff and against defendants for the possession of the land described in the complaint, and for its costs of suit.