## COLLINS v. BUBB.

(Circuit Court, D. Washington, E. D. April 7, 1896.)

1. PUBLIC LANDS—OPENING INDIAN RESERVATION—MINING LOCATIONS.

The act of July 1, 1892, opening a part of the Colville reservation, in the state of Washington, annulled from that date the executive order creating the reservation, and restored the lands to the public domain, subject only to the rights of the Indians to make selections for allotments in severalty; but the mineral lands contained therein are not subject to such selection, it being the intent of the law to award to each Indian agricultural land for his home.

2. SAME—INDIAN SELECTIONS—MINERAL LANDS.

For the purpose of giving the Indians the full benefit of the right to select from the whole tract, settlements upon and entries of agricultural lands must be postponed, under the act, until six months after the president's proclamation opening the lands to settlement and entry; but prospectors and miners are not required to wait for the proclamation to open the tract to exploration for minerals.

This was a bill by Charles N. Collins to enjoin John W. Bubb, as agent in charge of the Colville Indian reservation, from interfering with complainant's mining operations.

W. B. Heyburn, for plaintiff.

W. A. Peters, for defendant.

HANFORD, District Judge. The complainant, in his bill of complaint, claims the right to locate a lode claim within the limits of the Colville Indian reservation, and to work his claim, and extract mineral-bearing ores therefrom, on the ground that that part of said Indian reservation which embraces his mining claim was restored to the public domain, and thereby thrown open to exploration, and made subject to the rights of prospectors and miners, under the public land laws of the United States, by the provisions of the act of congress of July 1, 1892, entitled "An act to provide for the opening of a part of the Colville reservation, in the state of Washington, and for other purposes." 27 Stat. 62. And he complains that the defendant, as agent in charge of said reservation, has threatened and intends to forcibly expel him from the limits of said reservation, and prevent his mining operations. The object of the suit is to obtain an injunction to prevent the defendant from such interference, and the case has been argued and submitted upon the application for a temporary injunction, and a demurrer to the bill of complaint.

The parts of the act of congress referred to necessary to be considered at this time are the first, third, fourth, and fifth sections, which are as follows:

"Section 1. That subject to the reservations and allotment of lands in severalty to the individual members of the Indians of the Colville reservation in the state of Washington herein provided for, all the following described tract or portion of said Colville reservation, namely: Beginning at a point on the eastern boundary line of the Colville Indian reservation where the township line between townships thirty-four and thirty-five north, of range thirty-seven east, of the Willamette meridian, if extended west, would intersect the same, said point being in the middle of the channel of the Columbia river, and running thence west parallel with the forty-ninth parallel of latitude to the western boundary line of said Colville Indian reservation in the Okanagon river, thence north following the said western boundary line to the said forty-ninth parallel of latitude, thence east along the said forty-ninth parallel of latitude to the northeast corner of the said Colville Indian reservation, thence south following the eastern boundary of said reservation to the place of beginning, containing by estimate one million five hundred thousand acres, the same being a portion of the Colville Indian reservation created by executive order dated July second, eighteen hundred and seventy-two, be, and is hereby, vacated and restored to the public domain, notwithstanding any executive order or other proceeding whereby the same was set apart as a reservation for any Indians or bands of Indians, and the same shall be open to settlement and entry by the proclamation of the president of the United States, and shall be disposed of under the general laws applicable to the disposition of public lands in the state of Washington."

"Sec. 3. That each entryman under the homestead laws shall, within five years from the date of his original entry and before receiving a final certificate for the land covered by his entry, pay to the United States for the land so taken by him, in addition to·fees provided by law, the sum of one dollar and fifty cents per acre, one-third of which shall be paid within two years after the date of the original entry; but the rights of honorably discharged Union soldiers and sailors, as defined and described in sections twenty-three hundred and four and twenty-three hundred and five of the Revised Statutes of the United States, shall not be abridged, except as to the sum to be paid as aforesaid.

"Sec. 4. That each and every Indian now residing upon the portion of the Colville Indian reservation hereby vacated and restored to the public domain, and who is so entitled to reside thereon, shall be entitled to select from said vacated portion eighty acres of land, which shall be allotted to each Indian in severalty. No restrictions as to locality shall be placed upon such selections other than that they shall be so located as to conform to the congressional survey or subdivisions of said tract or country, and any Indian having improvements may have the preference over any other person in and to the tract of land containing such improvements, so far as they are within a legal subdivision not exceeding in area the quantity of land that he or she may be entitled to select and locate. All such allotments shall be made at the cost·of the United States, under such rules and regulations as the secretary of the interior may from time to time prescribe. Such selections shall be made within six months after the date of the president's proclamation opening the lands hereby vacated to settlement and entry, and after the same have been surveyed, and when such allotments have been selected as aforesaid and approved by the secretary of the interior, the titles thereto shall be held in trust for. the benefit of the allottees, respectively, and afterwards conveyed in fee simple to the allottees or their heirs, as provided in the act of congress entitled 'An act to provide for the allotment of land in severalty to Indians on the various reservations, and to extend the protection of the laws of the United States and territories over the Indians, and for other purposes,' approved February eighth, eighteen hundred and eighty-seven, and an. act in amendment and extension thereof, approved February twenty-eighth, eighteen hundred and ninety-one, entitled 'An act to amend and further extend the benefits of the act approved February eighth, eighteen hundred and eighty-seven, entitled "An act to provide for the allotment of land in severalty to Indians on the various reservations, and to extend the protection of the laws of the United States over the Indians, and for other purposes:"' provided, that such allotted lands shall be subject to the laws of eminent domain of the

state of Washington, and shall, when conveyed in fee simple to the allottees or their heirs, be subject to taxation as other property in said state.

"Sec. 5. That all Indians residing in the lands hereby vacated and restored, shall have the right, if they so prefer, under the direction of the Indian agent, to occupy and reside upon such portions of the Colville Indian reservation not hereby vacated as are not occupied by or in the possession of any other Indian or Indians."

The defendant contends that the above act did not restore the tract described to the public domain for any purpose whatsoever, but that the entire tract is still a reservation, and must continue to be a reservation for the Indians until the allotments to the Indians in severalty therein provided for shall have been made, or until the end of the period limited for the making of selections, after the president's proclamation.

The main question now to be decided is whether the tract described was, by the positive words in the first section, restored at once to the general mass of public lands of the United States, and from the date of the act ceased to be an Indian reservation, or whether the purpose of the law as expressed in its title remains to be accomplished at such time in the future as the president may select for issuing his proclamation removing all restrictions upon the rights of citizens to obtain titles by settlement and entries. The enactment of the law under consideration was preceded by appointment of a commission of three persons, to negotiate with the Colville Indians for the cession of such portion of the reservation as they might be willing to dispose of, in order that the same might be thrown open to settlement by white people, pursuant to an act of congress authorizing such commission, approved August 19, 1890 (26 Stat. 355). Said commission made a report to the secretary of the interior, which was transmitted to congress by the president in a message dated June 6, 1892. Said report contains the following statements:

"That of the portion of the territory ceded it is estimated that about three hundred thousand acres are suitable for agricultural purposes. The remainder is very valuable for grazing purposes and for the timber thereon. Much of the territory ceded is mountainous, and abounds in rich mineral deposits. The southern portion of said reservation, it being the portion of said reservation not ceded, contains the largest proportion of agricultural lands, and the grazing lands upon this portion are for the most part fine. The supply of timber here is quite ample. From the best information the commission has been able to obtain, it is believed that there is upon the portion of said reservation not ceded, an acreage of land suitable for agricultural purposes very largely in excess of a hundred and sixty thousand acres, the limitation indicated in department instructions dated October 21, 1891. The commission did not deem it advisable to negotiate with the Indians for the purchase of any greater area of territory than that ceded, and are satisfied that the portion of said reservation not ceded contains ample territory for the comfort, security, support, and maintenance of all the Indians upon said reservation in their various avocations of life. From the best information the commission could obtain without incurring the expense of a survey,—and this was not practicable owing to the scarcity of funds,—there remains of the portion of the Colville reservation not ceded near one million three hundred thousand acres."

The commission also negotiated a treaty with the Indians, extinguishing all their rights and claim to the north half of the Colville reservation, which treaty was to become effective as soon as approved by congress. Said treaty was submitted to congress, together

with a proposed bill to be enacted to give it effect. The message, with the report of the commission and agreement, was by the house of representatives referred to its committee on Indian affairs, and said committee reported that the necessity for opening at least a portion of the reservation is apparent, because of the following reasons, among others:

A lessening of the dimensions of the Colville reservation, the planting of active, prosperous, and well-ordered white communities on every side of the Indians, the building of railroads, the creation of towns and cities, the opening of mines, and the consequent establishment of markets near at hand, etc. Further, that the reservation is surrounded on two sides by the Columbia river, on one side by the wilds of British Columbia, and on the other by a portion of Washington that has no outlet by rail, because the reservation itself stands as a barrier to all railroad construction from the east. And as a third reason why the reservation should be opened, that the reservation as it stands to-day is a great obstacle to the development of the state of Washington and the general progress of the Pacific Northwest. So long as it continues to be the sporting ground of so sparse, thriftless, and irresponsible a population, its lands will remain untilled, and its mines will remain unopened, being more than the Indians need for sustenance and comfort, yielding no revenue to the general government, and being of no taxable value to the state of which it is an inseparable and essential part. It cuts off communication between the eastern and western portions of the state, and blocks the way to railroads that stand waiting at its boundaries. A railroad company, a local corporation, has constructed a line from the city of Spokane, the metropolis of Eastern Washington to Marcus, a point on the Columbia river, 100 miles distant, at an expense of over two million dollars, and has surveyed an extension through the reservation to the Okanagan country, an extensive region between the Colville reservation and the Cascade Mountains, rich in minerals and agricultural products, but wholly without railroad transportation, etc. The bill upon which this report was made was entitled "An act to ratify and confirm an agreement with the Indians residing on the Colville reservation, in the state of Washington, with certain modifications and making appropriation for carrying into effect the same." This was house bill No. 7,557, introduced in the house and referred to the committee of the whole on April 9, 1892. The bill went to the senate with this title, and was there completely changed, both as to title and character. The title was changed there to read "An act to provide for the opening of a part of the Colville reservation in the state of Washington, and for other purposes." Everything in the original act referring to the treaty entered into by the commissioners and incorporated in the original bill introduced in the house was abandoned in the senate. The senate struck out all reference to the treaty, and substituted the provisions of the law now under consideration. The house of representatives concurred, and the senate bill became a law without the signature of the president.

The title, text, and history of the act shows conclusively that the intention of congress was to lessen the dimensions of the Colville Indian reservation, and to do so at once, but saving to the Indians residing upon the part which was severed from the reservation their improvements, and an option to take lands in severalty within the limits of the tract severed, or to remove, and thereafter reside within the new boundaries of the reservation. After reading the law in its entirety, and giving effect to each of its provisions, I have reached the conclusion that the law must be construed as follows:

First. The law, by mandatory words in the present tense, annuls the executive order creating the reservation as to said tract, and restores the same to the public domain, subject only to the rights of the Indians to make selections of lands to be alloted to them in sev-

eralty. The lands valuable for the minerals contained therein are not subject to be selected for allotment to the Indians. It is the intention of the law, in providing for allotments of land in severalty, to award to each Indian agricultural land to be his home.

Second. For the purpose of giving to the Indians the full benefit of the right to select from the whole tract such lands as may be required for allotment, settlements upon and entries of agricultural land must be postponed until a date in the future, to be fixed by the president's proclamation; but prospectors and miners are not required to wait for the proclamation to open the tract to exploration for minerals.

Under the general provisions of the public land laws of the United States, individual rights to acquire title to nonmineral lands can only be initiated by settlement thereon, and improvements to be made, or by entry,—that is, by purchase; but rights to mining claims are initiated by discovery of valuable mineral deposits, and the mode of appropriating mining ground is described by the word "location," and throughout the public land laws the words "settlement" and "entry" are made use of to describe the mode of acquiring nonmineral lands. Chotard v. Pope, 12 Wheat. 586. And the words "exploration," "occupation," "location," and "purchase" are used to describe the mode of acquiring rights to mining claims. Section 2319, Rev. St. U. S., provides that:

"All valuable mineral deposits in lands belonging to the United States, both surveyed and unsurveyed, are hereby declared to be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase, by citizens of the United States and those who have declared their intention to become such, and under regulations prescribed by law, and according to the local customs or rules of miners in the several mining districts, so far as the same are applicable and not inconsistent with the laws of the United States."

This and the following sections in the same chapter fully authorize the complainant and other citizens to go upon the tract in question, and prospect for minerals, and locate mining claims, without further authorization or permission by executive proclamation, since congress has, by express enactment, removed the restrictions created by the executive order of July 2, 1892, setting apart the Colville reservation. The demurrer to the bill of complaint is overruled, and the complainant's application for an injunction is granted.