McFADDEN et al. v. MOUNTAIN VIEW MINING & MILLING CO.

(Circuit Court, D. Washington.   April 21, 1898.)

1. MINERAL LANDS IN INDIAN RESERVATION—RESTORATION TO PUBLIC DOMAIN —WHEN OPEN TO LOCATION.
     Mineral lands within the limits of the tract described in act July 1, 1892, § 1, providing for opening a part of the Colville Indian reservation in the state of Washington were, by said act, restored to the public domain, and were thereafter, without any proclamation of the president so declaring, open to exploration and location under the general laws of the United States.

2. SAME—POWER VESTED IN PRESIDENT—OPENING FOR SETTLEMENT.
     The provision of Act July 1, 1892, vesting in the president power to fix a date when that part of the Colville Indian reservation restored to the public domain should be open to settlement, was intended to give the Indians first choice of lands to be allotted to them, and had no application to mineral lands, which were not subject to such allotment.

This was an action by W. D. McFadden and others against the Mountain View Mining & Milling Company to determine an adverse claim to mining lands.

Stoll & McDonald, for plaintiffs.

W. B. Heyburn, for defendant.

HANFORD, District Judge.   This action was commenced pursuant to section 2326, Rev. St., for the purpose of securing an adjudication of adverse claims to mining ground.   A written stipulation, setting forth all the material facts, has been signed by all the parties and filed.   By said stipulation, all questions which have been in dispute between the parties are settled or eliminated from the case, except the question as to the lawfulness of the original location of the vein or lode claim called the "Mountain View Lode," made on the 16th day of October, 1895, by Charles N. Collins, grantor of the defendant corporation; and the plaintiffs concede that the requirements of the law as to the manner of making a mineral location were in all respects observed by Collins, and he was in every respect qualified to locate and claim mineral lands under the laws of the United States; therefore said location was lawful, if said land was at the date of said location open to exploration by mining prospectors, and subject to location, under the general laws of the United States.   The land is situated within the limits of the tract described in the first section of the act of congress, passed without approval by the president, July 1, 1892, entitled "An act to provide for the opening of a part of the Colville

reservation, in the state of Washington, and for other purposes." 27 Stat. 62. It is the defendant's contention that, although said tract was not by said statute placed on the market for sale, nor opened to settlement, it was restored to the public domain, and from the date of the act ceased to be a reservation, and was brought under the provisions of section 2319, Rev. St., relating to the mineral lands of the United States, which section expressly declares: "All valuable mineral deposits in lands belonging to the United States, both surveyed and unsurveyed, to be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase, by citizens of the United States, and those who have declared their intention to become such." The plaintiffs controvert this proposition, and they insist that a proclamation by the president, as provided in said act, is necessary to segregate the tract to be restored to the public domain from the reservation, and that no individual could lawfully initiate a right within the limits of said tract, under any of the general laws relating to the public lands of the United States, at any time prior to the act of congress approved February 20, 1896, entitled "An act to extend the mineral land laws of the United States to lands embraced in the north half of the Colville Indian reservation" (29 Stat. 9). In the decision of this court in the case of Collins v. Bubb, 73 Fed. 735, the provisions and the history of the act of 1892 are set forth, and an interpretation of the act is given which fully sustains the contention of the defendant in this case. The plaintiffs ask the court to consider the question again, and they argue that the interpretation of the act given in the case cited is contrary to the intention of congress, as shown by the words of the act and by subsequent legislation, and by the contemporaneous interpretation given by executive officers of the government.

I have considered the argument with due care and patience, but without discovering any basis for the contention that the words of the act show intention in the legislative mind to enact a law which should lie dormant until a time in the future when the president should put vitality and force into it by an executive proclamation. As I endeavored to show in the decision in the case of Collins v. Bubb, the first section provides for two things, viz.: Restoration to the body of the public domain of part of the land which by an executive order had been set apart for an Indian reservation; and, second, the opening to settlement of the part restored. The act itself, by positive words in the present tense free from ambiguity, accomplishes fully the first object of the law. It is true that the tract described is not restored unconditionally, but the restrictions and conditions are clearly defined, and by the rule, "Expressio unius, est exclusio alterius," there can be no additional implied restrictions or conditions. Congress intended to secure to the Indians the right of first choice of such parts of the tract as they are entitled by the provisions of the act to have allotted to them in severalty, and, to avoid all danger of conflicting claims and disputes between them and white settlers, power to fix a date in the future when the tract should be opened to settlement and entry was vested in the president. It was so provided in order to afford time for the Indian allotments to be made before the first white settlers

should be permitted to come upon the tract. There can be no such conflicting claims as to lands containing valuable deposits of mineral, for the reason that such lands are not subject to selection for allotment to Indians. The attorneys for the plaintiffs have cited an instructive opinion by Judge Sanborn in the case of Hartman v. Warren, 22 C. C. A. 30, 76 Fed. 157, in which words and phrases frequently used in the laws of the United States relating to the public lands are explained. According to my understanding of the opinion, the court held that the phrase "pre-emption entry" has a particular meaning in land-office practice, and when used in a statute relating to public land it is to be understood in a restricted sense, rather than comprehensively, as being applicable to all cases in which a particular person may have a right to be preferred to others in the purchase or acquisition of public lands. This agrees with my own views as to the true interpretation of the statutes, as expressed in the case of Collins v. Bubb.

In 1896, congress, by two special acts, extended the mineral-land laws so as to apply to the tract which was by the act of 1892 declared to be restored to the public domain, and granted a right of way across said tract to a railway company. The argument is that these enactments were unnecessary if the act of 1892 did of itself, eo instanti, take the tract out of the reservation, and restore it to the public domain; that congress would not do a vain thing; and therefore it must be presumed that the act of 1892, as construed and understood by congress, remains ineffective. This is not a necessary inference. The executive branch of the government having denied the rights of prospectors and miners and railroad builders, congress may well have considered that a sufficient reason for additional legislation. Certainly the acts do not show a disposition on the part of congress to acquiesce in the rulings of the interior department, but rather a continuity of purpose, to remove the barriers in the way of mining operations and the construction of highways, which purpose was first intimated by the act of August 19, 1890 (26 Stat. 355), providing for a commission to negotiate with the Colville Indians for relinquishment of part of their reservation, then plainly expressed in the report to the house of representatives by its committee on Indian affairs, which preceded the enactment of the law of 1892, and finally persisted in and made emphatic by these two enactments in 1896. It must be conceded that the construction of the act of 1892 by executive officers of the government is contrary to the opinion of this court. But, with all due deference, I must decide according to my own understanding of the law. The opinions of officers of the interior department "are entitled to careful consideration, and may well be permitted to lead the way to the proper construction of an ambiguous statute, but where the words of an act of congress are plain, and their meaning is clear, they must prevail. Webster v. Luther, 16 Sup. Ct. 963–967; U. S. v. Tanner, 147 U. S. 661–663, 13 Sup. Ct. 436; Merritt v. Cameron, 137 U. S. 542, 11 Sup. Ct. 174; U. S. v. Graham, 110 U. S. 219, 3 Sup. Ct. 582; Swift Co. v. U. S., 105 U. S. 691." Hartman v. Warren, 22 C. C. A. 30, 76 Fed. 162. I am confirmed in the opinion given in Collins v. Bubb, and will follow it in this case.

Findings and a judgment may be prepared awarding to the defendant all of the ground included within the lines of the Mountain View lode claim, and to the plaintiffs only the land within the lines of their several claims, and not included within the defendant's lines. The defendant will also recover costs.